George LAYTON, D.C.,
Respondent/Appellant,

v.

Roxanne J. PENDLETON,
Appellant/Respondent.

Nos. WD 47043, WD 47176.

Missouri Court of Appeals,
Western District.

Nov. 2, 1993.

Max Von Erdmannsdorff, Kansas City, for appellant.

Ronald R. Holliger, Kansas City, for respondent.

Before ULRICH, P.J., and BERREY and SMART, JJ.

BERREY, Judge.

George Layton, plaintiff, filed an action for damages in the Circuit Court of Clay County against Roxanne Pendleton, an attorney alleging professional negligence in regard to services she allegedly rendered to the plaintiff regarding a contract for the sale of his business in August of 1984.[1] The matter was tried before a jury. The jury entered a verdict assessing plaintiff's damages in the sum of $20,500.00 but equally assessing the fault as to both plaintiff and defendant. The court therefore entered a net judgment in favor of plaintiff and against the defendant in the sum of $10,250.00. Plaintiff filed a motion for additur and new trial. The trial

---

1. A copy of the contract is attached hereto as Appendix # 1.

court did not rule on any of the pending post trial motions. Thereafter, defendant filed a notice of appeal and plaintiff filed a notice of cross appeal.

Appellant Pendleton alleges the trial court committed the following points of error: (1) in allowing jury instruction 7 as it presented both specific and general allegations of negligence; (2) in allowing Layton's references to the Uniform Commercial Code where the U.C.C. was not set out in the petition; (3) in submitting the case to the jury where there was a lack of evidence to prove damages, and; (4) in overruling her jury instruction defining attorney-client relationship. Cross-appellant Layton alleges in his cross-appeal the trial court erred in submitting comparative fault to the jury.

George Layton opened a private chiropractic practice in Platte County, Missouri in the spring of 1981. To establish his practice he borrowed $20,000.00 from Laurel Bank to purchase equipment and provide operating capital. The bank required collateral which Layton did not have and as a result his parents mortgaged their home to secure the loan. The business did not do well and by the spring of 1984 Layton had decided to sell his practice. His asking price for the sale of the business was the payoff of the loan with Laurel Bank, approximately $20,000.00. Layton was put in contact with Dr. Edward Mernan, who was in the business of buying and reselling chiropractic practices. Mernan and Layton agreed on Layton's asking price and the two entered into an oral agreement. Mernan would make monthly payments in the amount of Layton's obligation to Laurel Bank until he resold the practice, at which time he would pay the balance of the purchase price. No money was to be paid up front by Mernan.

Layton testified he met Pendleton when she spoke at a chiropractic luncheon. He called her when he agreed to sell his practice and told her he needed a contract drafted. Layton testified that he expected the defendant would draw a contract to provide some form of protection for him. A meeting was held in early August of 1984 between Layton, Pendleton and Mernan. A contract was drafted by Pendleton and subsequently signed by the parties.

Pendleton testified that she simply drafted the contract Layton and Mernan brought her in legal terms, choosing the words of the agreement, but claimed she was not acting as an attorney for either party to the contract. The defendant testified that she was not hired as a lawyer but as an "intermediary" or "scrivener." She described the difference in roles as that an attorney would look out for a client's interest in drafting a contract whereas an intermediary would simply take the parties' agreement and draft it in the form of a written contract.

After August of 1984 Mernan began making monthly payments to Layton as per the contract. In early 1985, Layton heard that Mernan had sold the practice to another chiropractor. Mernan had in fact sold the practice to Dr. June Buskirk for $22,000. Layton called Mernan and asked for the balance of the purchase price. Mernan said he was not obligated under the contract to pay the balance of the purchase price. Layton then called Pendleton who told him the only thing he could do was to hope for regular monthly payments from Mernan.

Mernan continued to make monthly payments until March of 1986 when all payments ceased. Layton testified he called Pendleton who told him he could only sue for payments missed because it was not provided for in the contract to sue for the remaining balance in the event of default of a monthly payment. In the fall of 1986 the defendant sued Dr. Mernan on behalf of Layton. Mernan then filed for bankruptcy in Louisiana. Layton continued making a total of 75 payments of $347.60 until the loan to Laurel Bank was paid in full and the mortgage released on his parent's home.

Although Pendleton claimed she did not represent either party to the contract and was not acting as an attorney she did not tell either Layton or Mernan that she would not be representing either of them. Pendleton testified that if she had been acting as an attorney, part of her job would have been to anticipate issues and problems that might occur in a contract for sale of a business. She testified that among the issues an attor-

ney would consider would be how to secure and obtain payment of future installments and be able to obtain return of the property sold if no payment was made. Because she did not believe she was acting as an attorney Pendleton did not advise Layton that he might want to think of either of those issues. She did not tell Layton he would not be able to repossess the property in the event of default under the contract by Mernan. Neither did she advise Layton that Mernan would not be obligated to pay the balance of the sales price when he resold the practice. Pendleton admitted there was no due on sale clause in the contract but said this was because the parties had not requested one. This testimony was contradicted by Layton. Pendleton also testified she didn't raise the issue as to whether Layton should consider obtaining a security interest in the property being sold to Mernan.

An attorney expert witness testified on behalf of Layton and opined that an attorney has an obligation to tell a person of the risks and exposures in a contract for sale of a business and then let them make up their mind as to what terms and provisions they desire. He testified that in a transaction such as occurred between Layton and Mernan the contract should have had a due on sale clause and a security interest provided for or at least Layton should have been given an opportunity to decline those protections.

An attorney expert testified on behalf of the defendant and described the role of a scrivener. He testified that he did not see anything negligent in Pendleton's work with regard to the contract because she was not acting as an attorney. Pendleton's expert did admit that if an attorney-client relationship existed between Layton and Pendleton that it would be negligent if Pendleton did not at least discuss issues of the due on sale clause and a security interest with her client.

■ Pendleton in her first point asserts that the trial court erred in overruling her objection to jury Instruction 7 claiming the instruction presented the jury with both specific and general allegations of negligence. Instruction 7 states:

In your verdict you must assess a percentage of fault to defendant whether or not plaintiff was partly at fault if you believe:

. . . . .

Second, either:

defendant failed to advise plaintiff of the need for a security agreement protecting his interest in the property and equipment until full payment by the buyer, or

defendant failed to provide in the contract that in the event buyer sold the property and equipment that the balance of any money due plaintiff should be immediately due, or

defendant failed to adequately draft the contract to protect plaintiff in the event of breach of the contract by the buyer, and

. . . . .

Rule 70.03 of the Missouri Rules of Civil Procedure provides that specific objections to instructions shall be required in motions for new trial unless made at trial.

Pendleton's objection at trial was that the instruction "goes beyond the scope of pleadings. And additionally, because it allows the jury to consider the fault of Edward Mernin [sic], a non-party." In Pendleton's motion for new trial, she objected to instruction 7, paragraph 2 alleging that Mernan's bankrupt condition would have prevented the contract from protecting Layton against loss. Pendleton also objected to paragraph 4 of instruction 7 in that it included "or combined with the acts of Edward Mernan to directly cause damage to plaintiff." Pendleton did not object to the instruction based upon the general and specific allegations of negligence.

■ In absence of specific objection at trial, a motion for new trial needs to contain specific objections to instructions. *Walsh v. St. Louis National Baseball Club, Inc.,* 822 S.W.2d 559, 562 (Mo.App.1992). Allegations of error in a new trial motion must be sufficiently definite to direct the trial court's attention to particular acts or rulings asserted to be erroneous, so the court can have the opportunity to correct any error without delay, expense, or hardships of appeal. *Id.* The rule requiring the making of specific objections to instructions is to be strictly enforced. *State ex rel. Hwy. Com'n v. Lynch*

*Toyota*, 830 S.W.2d 481, 488 (Mo.App.1992). Neither Pendleton's objection at trial nor her objection in the motion for new trial were specific objections to apprise the trial court of her contention that the instruction contained allegations of both specific and general negligence. The trial court was not apprised of the specific objection to give it an opportunity to correct the alleged error. Actually, the instruction sets out specific allegations of negligence in the disjunctive. The instruction is not defective.

■ A party cannot complain of error in the instruction of an opposing party which is common to instructions of both parties. *McDonald v. Plas*, 401 S.W.2d 929, 932 (Mo. App.1966). As to paragraph 2, Pendleton offered the identical language in her proposed Instruction No. B. Therefore, Pendleton waived any objection she may have had to the submission of paragraph 2.

Pendleton's Point I is denied.

■ In her second point Pendleton claims the trial court erred in admitting testimony on her failure to provide Uniform Commercial Code (U.C.C.) filings, thereby allowing Layton to travel beyond the scope of the pleadings.

■ Mo.Rev.Stat. § 509.050 (1987) provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the facts showing the pleader is entitled to relief." A petition need only allege ultimate facts, not facts or circumstances by which ultimate facts will be established. *Chase Elec. Co. v. Acme Battery Mfg. Co.*, 798 S.W.2d 204, 208 (Mo.App.1990); *Kennedy v. Kennedy*, 819 S.W.2d 406, 408 (Mo.App.1991). A petition is not insufficient merely because of lack of definiteness or because of informality in the statement of an essential fact. *Pillow v. General American Life Ins. Co.*, 564 S.W.2d 276, 279 (Mo.App. 1978).

■ It is reasonable to infer from allegations of failure to consult or advise with respect to the need for security includes Uniform Commercial Code principles. Pendleton could have filed a motion for a more definite statement under Rule 55.27(d) if the pleading was not of sufficient definiteness to enable her to prepare her answer or prepare for trial. Failure to move for a more definite statement under Rule 55.27(d) waives deficiencies in matters of particularity. *Sirna v. APC Bldg. Corp.*, 730 S.W.2d 561, 566 (Mo. App.1987).

Pendleton cannot claim prejudice from any variance between the pleadings and trial. Pendleton apparently understood that the U.C.C. applied to the cause of action as she mentioned the U.C.C. in her answer. We also note that Pendleton cannot claim prejudicial error after considering the extensive questioning at her deposition regarding the U.C.C.

The allegations in the petition concerning security and that plaintiff was not advised or consulted about the advantages of securing the contract, were sufficient to allow testimony about the U.C.C. at trial.

Pendleton's Point II is denied.

■ Pendleton's third point is that the trial court erred in submitting the case to the jury because the plaintiff failed to present evidence to measure the damages.

■ The law in Missouri is that damages need not be proved with exact certainty. *Iota Management Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 418 (Mo.App.1987). The fact of damages, rather than the amount of damages must be proven with reasonable certainty. *Cole v. Control Data Corp.*, 947 F.2d 313, 319 (8th Cir.1991).

Evidence was presented at trial that the contract price was approximately $20,000 which represented the payoff on the bank loan at Laurel Bank. The sales contract stipulated the property and equipment were worth nearly $19,000. After Dr. Mernan defaulted on the contract, Layton made a total of 75 payments of $347.60, totaling $26,070. This finally paid his loan to Laurel Bank. The evidence presented was sufficient to support a damage award of $20,000.

Pendleton's Point III is denied.

■ Pendleton's final point is that the trial court erred in allowing Instruction 6 because it excluded from the definition of attorney-client relationship the relationship

of intermediary or scrivener serving the interests of both Layton and Mernan. Instruction 6 as submitted by the trial court reads as follows:

Attorney-client relationship as used in these instructions means that at the time the Sale of Chiropractic Practice contract dated August 3, 1984 was drafted, plaintiff was engaging defendant for the purpose of obtaining legal services.

Instruction 6, regarding the definition of attorney-client relationship is supported by *In re Estate of Mapes,* 789 S.W.2d 44, 48 (Mo.App.1990) which upheld the trial court's decision to submit a similar instruction. The decision to submit a definitional instruction is a matter within the sound discretion of the trial court. *Mapes,* supra at 48.

Pendleton testified that she represented Layton in trying to recover the defaulted payment from Mernan. This subsequent representation is inconsistent with her argument that she represented both parties as a scrivener when drafting the agreement. If she represented both Layton and Mernan in drafting the contract she could not later represent Layton against Mernan. *Terre Du Lac Property Owners' Ass'n. v. Shrum,* 661 S.W.2d 45, 47 (Mo.App.1983). An attorney cannot represent one client against another client. *Id.*

Pendleton cites *Dougherty v. Dougherty,* 204 Mo. 228, 102 S.W. 1099 (1907), and *Cox v. Cox,* 725 S.W.2d 880 (Mo.App.1987) for her argument that the attorney-client definition should include the relationship of intermediary or scrivener serving the interests of both parties. Neither case supports the contention. Both are reformation of instrument cases. Neither case suggests there is not a attorney-client relationship merely because the attorney is acting as a scrivener.

Layton met Pendleton when she spoke at the chiropractic luncheon. Layton later called Pendleton at her law office. He told her that he was selling his practice and needed her to draft a contract. Later, Layton and Mernan met at Pendleton's law office to execute the contract. Layton alone paid Pendleton's fee. At no time did Pendleton ever inform the parties that she was acting only as a scrivener. After Mernan became delinquent in paying the installments due on the contract, Pendleton sued Mernan on behalf of Layton. Together these facts indicate there was an attorney-client relationship between Layton and Pendleton. We believe it was reasonable for Layton to expect that Pendleton was acting on his behalf as a lawyer. If a lawyer acts in a transaction as a scrivener, it is only reasonable that the parties be informed that the lawyer is acting as a scrivener and not as an attorney for either party.

Pendleton's Point IV is denied.

Appellant–Respondent Layton cross-appeals alleging the trial court erred in giving Instruction 10 submitting plaintiff's comparative fault to the jury. Instruction 10 states:

In your verdict you must assess a percentage of fault to the plaintiff if you believe:

First, plaintiff entered into the contract with Edward Mernan without first investigating his financial condition, or obligated himself to, and partially performed an agreement before he sought defendant's services and,

Second, plaintiff was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

The terms "negligent" or "negligence" as used in these Instructions regarding the plaintiff's conduct means the failure to use ordinary care. The phrase "ordinary care" means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

■ Layton first avers that the submission of Instruction 10 was improper because there was no evidence of Mernan's financial condition when the contract was entered into thereby confusing and misleading the jury.

■ Substantial evidence is required to support an instruction on comparative negligence. *Baumgartner v. Bi–State Development Agency,* 811 S.W.2d 63, 65 (Mo.App. 1991). An instruction is misleading and confusing if it is not supported by the evidence. *Petterson v. State Farm General Insurance*

*Co.,* 701 S.W.2d 764, 766 (Mo.App.1985). There must be evidentiary support for each disjunctive submission; if not, the instruction is defective, erroneous and requires a new trial. *Miller v. Scholl,* 594 S.W.2d 324, 328 (Mo.App.1980).

Instruction 10 submitted two issues of alleged negligence on behalf of Layton. The first was Layton's acknowledged failure to investigate Dr. Mernan's financial condition. At trial, there was no evidence of Mernan's financial condition when the contract was entered into in 1984. The only evidence at trial was that two years after the sale of the business by Layton, Mernan filed bankruptcy and had $1.8 million in unsecured debts. This evidence has little if any relevance to Mernan's financial condition at the time the contract was entered into in 1984. Mernan's bankruptcy came 18 months after the resale of the business. Layton could have received the money, before Mernan's bankruptcy at the time of the resale, if he had been protected by a due on sale clause and security agreement regardless of Mernan's financial condition. Due to the lack of evidence of Mernan's financial condition in 1984 the jury was left to speculate as to what the condition was, what effect it might have had on the transaction, and whether Layton was negligent in not making an investigation.

██ Evidence must be presented to show the legal and factual effect of alleged negligence. An instruction submitting negligence must submit all necessary elements including duty, breach thereof and, causation. Instruction 10 assumes a duty to investigate the financial condition and the effect of a failure to do so without adequate evidentiary support as to what such an investigation would reveal.

██ The second prong of alleged comparative negligence was that Layton "partially performed an agreement before he sought defendant's services." This portion of the instruction apparently arises from the fact Layton assigned his lease on the business location to Mernan.

The instruction is in error because it assumes Layton was negligent in assigning his lease before seeking Pendleton's services.

The submission presumes Layton was bound to an oral sales agreement that did not include a due on sale clause or security interest. The evidence indicates however that Layton and Mernan agreed to payment in full when Mernan resold the business and that Layton told Pendleton of this fact.

We find merit in Layton's Point I.

As to Defendant Pendleton's appeal, we find the trial court did not commit reversible error in submitting Instruction 7. We also find it was proper to admit testimony regarding the U.C.C., there was adequate evidence to measure plaintiff's damages and the attorney-client instruction was proper.

As to Plaintiff Layton's cross-appeal, we find the trial court erred in its use of Instruction 10 as the facts and evidence were insufficient to support submitting comparative fault to the jury.

Reversed and remanded for the trial court to reinstate the plaintiff's judgment in the full amount of $20,500.00.

All concur.

## APPENDIX 1

### SALE OF CHIROPRACTIC PRACTICE

Agreement made this 3rd day of August, 1984, between George Layton D.C., hereinafter referred to as the seller, and Edward Mernan, D.C., hereinafter referred to as the purchaser.

Whereas, George Layton, of Platte County, Missouri, had engaged in a chiropractic practice where he maintained an office at Tiffany Plaza Shopping Center, Kansas City, Missouri.

Whereas, the seller had equipped his office with improvements, furniture, fixtures, and other equipment of an appraised value of $18,710.22 and had established patient lists of considerable number and intangible value; and,

Whereas, the purchaser, a licensed chiropractor of the State of Missouri, desires to assume the practice of the said seller and recognizes the value of said practice;

Now, Therefore, it is agreed as follows:

1. Purchaser agrees to pay the loan held by the American Bank of Platte County (formerly known as the Laurel Bank of Platte County) in the seller's name, which loan is designated as number 506–556–9–51525. Purchaser agrees to make the monthly payments due thereon in the amount of $347.60 or to pay the sum of $20,000.00 to satisfy said note at purchaser's exclusive option. A copy of said note is attached hereto.

2. Purchaser further agrees to execute an assignment of lease, a copy of which is attached hereto. Said lease assignment is to run concurrent with the present lease terms.

3. The seller shall contribute to the use of the venture, all items of property as attached to this agreement, consisting of three pages, and marked as Attachments 1, 2 & 3, other furniture and fixtures and office equipment, patient lists and records, all of which shall be retained by the purchaser upon fulfillment of his obligations hereunder.

In Witness Whereof, the parties have hereunto set their hand and seal this 3rd day of August.

/s/ _____
Edward Mernan D.C. (Purchaser)

/s/ _____
George Layton, D.C. (Seller)