CHANG'S IMPORTS, INC., Plaintiff,

v.

**Ronald SRADER and Joseph Rubin, Defendants.**

No. 00 Civ. 4832(JGK).

United States District Court, S.D. New York.

Aug. 20, 2002.

---

## OPINION AND ORDER

KOELTL, District Judge.

The plaintiff, Chang's Imports, Inc. ("Chang's Imports") brought this action against the defendant Ronald Srader asserting a number of causes of action that purportedly either arose out of or relate to an agreement between these parties (the "Settlement Agreement"). This Agreement purported to settle a number of disputes between the plaintiff and Srader, which arose out of a prior relation and concerned the conditions under which the plaintiff would license and sell the "Margaret Jerrold" trademark to Srader, an appropriate payment schedule for the amounts owed between the parties and a method for determining these amounts. The plaintiff also raised a number of causes of action against the defendant Joseph Rubin, an attorney who helped mediate the parties' prior disputes and who drafted the Settlement Agreement.

On July 18, 2001, the Court dismissed Counts One, Two, Four, Five, Six, Seven and paragraph 64 of Count Fourteen of the Complaint without prejudice. The Court subsequently granted a motion by Srader to compel the plaintiff to arbitrate the underlying disputes between Srader and the plaintiff. These parties are presently arbitrating the plaintiff's claims against Srader.

The defendant Rubin now moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the remaining two claims against him, namely, Counts Fourteen and Fifteen, which are for negligence in conducting the mediation and drafting the Settlement Agreement.

## I.

The standard for granting summary judgment is well established. Summary

judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219 (2d Cir.1994); *Shaw v. Rizzoli Int'l Publ'ns, Inc.,* No. 96 Civ. 4259, 1999 WL 160084, at *1, (S.D.N.Y. Mar.23, 1999). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will determine those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party, Rubin in this case. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *Gallo,* 22 F.3d at 1223. If the moving party meets this burden, the burden shifts to the nonmoving party, Chang's Imports in this case, to come forward with

"specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs.,* 43 F.3d 29, 37 (2d Cir.1994).

## II.

Unless otherwise indicated, the following facts are either undisputed or are matters of public record. On May 31, 1987, the plaintiff and Srader entered into an agreement (the "1987 Agreement") that allowed Srader to develop a shoe business owned by the plaintiff under the plaintiff's "Margaret Jerrold" trademark. Under the 1987 Agreement, the plaintiff agreed to advance Srader payments for certain business expenses, Srader agreed to manage the shoe business, and the parties were to split the gross proceeds in accordance with certain specified payment terms. (Pl.'s Rule 56.1 St. ¶ 1; Def.'s Rule 56.1 St. ¶ 1.) The Agreement ultimately expired in 1997. (Pl.'s Rule 56.1 St. ¶ 2; Def.'s Rule 56.1 St. ¶ 2.) According to the Complaint, the amounts that had been advanced to Srader were reflected in a series of promissory notes (the "Notes"). (Compl.¶ 13.)

After the Agreement expired, a number of disputes arose between the plaintiff and Srader concerning the conditions under which Srader could continue to license and/or acquire the "Margaret Jerrold" trademark. The plaintiff and Srader retained the defendant Rubin, who is an attorney, to act as a mediator to assist them in finding an amicable resolution to their differences. Rubin had previously provided legal representation to Clark Chang, the plaintiff's principal. (Pl.'s Rule 56.1 St. ¶ 3; Def.'s Rule 56.1 St. ¶ 3.)

On March 17, 1999, the plaintiff and Srader signed a letter agreement from Rubin stating:

Gentlemen:

You have requested me to assist you in finding an amicable resolution to your differences relating to the trademark Margaret Jerrold and the business relating thereto.

As you can well understand this places me in a clear conflict of interest and I have advised you that you should be represented by different attorneys. However, you have represented to me that you are both aware of the conflict of interest issue and still desire me to assist you in finding a common resolution of your difficulty and structuring a settlement.

Please sign below to evidence your waiving any claim of conflict of interest, your request that I act for both of you and your consent to my doing so with regard to this matter. You further agree to share the cost of my services on a 50–50 basis.

Hopefully, we can mediate a settlement that will enable you both to work together in a successful way.

Letter dated March 17, 1999 ("Waiver Letter"), attached as Ex. A to Compl. Both Chang and Srader signed the Waiver Letter under the statement: "Accepted and Agreed To." *Id.*

Rubin subsequently assisted the parties in coming to a resolution of their disputes, and then reduced the agreement to writing in the form of a draft Settlement Agreement. (Pl.'s Rule 56.1 St. ¶ 10; Def.'s Rule 56.1 St. ¶ 10.) Rubin forwarded the draft to the plaintiff and Srader for comments, and again mentioned review by an independent attorney, and the parties executed the final Settlement Agreement on March 31, 1999. (Pl.'s Rule 56.1 St. ¶¶ 11–12; Def.'s Rule 56.1 St. ¶ 11–12.)

The Settlement Agreement acknowledged the existence of the advancements that the plaintiff had made to Srader under the 1987 Agreement (the "Loan"), and indicated that Srader's obligations for the Loan were separate and apart from the Settlement Agreement. *See* Settlement Agreement at 1 ("WHEREAS, Chang made certain loans to Srader pursuant to the [1987 Agreement] and personally (e.g., to pay taxes) (collectively, 'the Loan') and Srader desires to use funds from the business generated by use of the Trademark to repay said Loan"); *id.* at § 2.06. The Settlement Agreement nevertheless consolidated these obligations and created a new payment schedule for the Loan, *id.* at §§ 2.01 & 2.03, and allowed Srader to license exclusively and then purchase the Margaret Jerrold trademark from the plaintiff on the condition that Srader, among other things, met this payment schedule. *Id.* at §§ 1.01 & 1.02. During the mediation, Srader had not disputed that he owed the plaintiff the amounts reflected in the Notes. *See, e.g.,* Deposition of Joseph Rubin dated July 17, 2001 ("Rubin Dep."), at 44–45, 78–79, 86–88, 102–03, 115–16, 141, 145–46, attached as Ex. D to Affirmation of William I. Strasser dated December 7, 2001 ("Strasser Aff."). The plaintiff had claimed that this amount was $712,640.45, however, and Srader had taken the position that he wanted to have his accountant go over the relevant records before he would agree that that particular sum was accurate. *See* Rubin Dep. 85, 110–113. In light of this dispute, the Settlement Agreement provided for a method of determining the amount due on the Loan, under which each party was to have an independent accountant determine the amount purportedly owed, and, if the accountants could not come to an agreement, a third independent accountant was to be retained and the issue was to be

decided by majority vote. Settlement Agreement § 4.01.

After executing the Settlement Agreement, the parties retained separate accountants to review the relevant records, in accordance with the terms of the Agreement, but the accountants came to very different conclusions concerning the amounts owed between the parties. The plaintiff's accountant determined that Srader owed the plaintiff $966,916.66. Srader's accountant, by contrast, determined that Srader did not owe the plaintiff anything and that the plaintiff in fact owed Srader over $900,000.00. (Pl.'s Rule 56.1 St. ¶ 17; Def.'s Rule 56.1 St. ¶ 17.) This latter conclusion was based in part on the contention that the amounts owed on the Loan had to be offset under the 1987 Agreement for certain chargebacks that were owed to Srader under the 1987 Agreement. *See* Deposition of Ronald Srader dated November 14, 2002 ("Srader Dep."), at 102–11.

Rather than submitting this dispute to a third accountant, the plaintiff brought suit against Srader and Rubin, seeking among other things to invalidate the Settlement Agreement and obtain the amounts allegedly owed on the Notes.[1] (Pl.'s Rule 56.1 St. ¶ 18; Def.'s Rule 56.1 St. ¶ 18.) The Court subsequently granted a motion by Srader to compel arbitration of the dispute between the plaintiff and Srader pursuant to an arbitration clause in the Settlement Agreement.

## III.

The plaintiff's fourteenth cause of action is for negligence against Rubin for allegedly representing both the plaintiff and Srader during the mediation although Rubin "was in a position of conflict of interest and should never have mediated and/or discussed the matter with both the Plaintiff ... and ... Srader, without Plaintiff having the benefit of counsel." (Comp. ¶ 63.) The Complaint alleges, further, that Rubin was negligent in failing to advise the plaintiff to seek independent counsel, failing to inform the plaintiff that the Settlement Agreement purportedly extended beyond the scope of the license and sale of the Margaret Jerrold trademark, and failing to advise the plaintiff that the Settlement Agreement allowed Srader to contest monies allegedly owed to the plaintiff by Srader pursuant to the Notes. (Compl.¶¶ 65, 68.) The plaintiff's fifteenth cause of action is also for negligence, specifically for failing to investigate critical facts relevant to the Notes and drafting the Settlement Agreement in a way that allowed Srader to contest the amounts owed under the Notes. The defendant Rubin moves for summary judgment on these claims on the ground that the plaintiff has not produced any evidence of any actions on Rubin's part that fell below the standard of care that Rubin owed the plaintiff during the mediation and drafting process.

One of the critical issues in this motion is the appropriate standard of care to be applied to Rubin's conduct during the mediation process. The plaintiff bases its claims for negligence almost entirely on the contention that Rubin was an attorney, who, as such, allegedly owed the plaintiff all of the duties of professional responsibility that arise when an attorney represents, or decides whether to represent, a client. The plaintiff's primary evidence is also in the form of expert testimony concerning the relevant professional standards of con-

---

1. The plaintiff originally brought suit in the United States District Court for the District of New Jersey, but that court found that there was no diversity jurisdiction over the claims raised in that action. *See Chang's Imports, Inc. v. Srader,* Civ. No. 99–3989 (D.N.J.). The plaintiff subsequently brought the present action in this Court.

duct that allegedly apply to attorneys in New York.[2]

In order to establish a claim for negligence in the practice of law under New York law, a party must establish that (1) the attorney was negligent; (2) the negligence was the proximate cause of the loss sustained; and (3) the plaintiff sustained actual damages as a result of the attorney's negligence. *Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo,* 259 A.D.2d 282, 686 N.Y.S.2d 404, 405 (1999); *Khadem v. Fischer & Kagan,* 215 A.D.2d 441, 626 N.Y.S.2d 500, 502 (1995); *Franklin v. Winard,* 199 A.D.2d 220, 606 N.Y.S.2d 162, 164 (1993). Negligence or legal malpractice exists when an attorney fails to exercise that degree of skill commonly exercised by an ordinary member of the legal community. *Estate of Nevelson,* 686 N.Y.S.2d at 405; *Thaler & Thaler v. Gupta,* 208 A.D.2d 1130, 617 N.Y.S.2d 605, 606 (1994); *Marshall v. Nacht,* 172 A.D.2d 727, 569 N.Y.S.2d 113 114 (1991).

However, Rubin was not acting as an attorney for either the plaintiff or Srader in negotiating and drafting the Settlement Agreement; he was acting as a neutral mediator. The plaintiff and Srader both signed the Waiver Letter, indicating that they understood that they were hiring Rubin only "to assist [them] in finding an amicable resolution to [their] differences relating to the trademark Margaret Jerrold and the business relating thereto," and that they were "both aware of the conflict of interest [that position would entail] and still desire[d Rubin] to assist [them] in finding a common resolution of [their] difficulty and structuring a settlement." Waiver Letter.

The plaintiff cites *Layton v. Pendleton,* 864 S.W.2d 937 (Mo.App.1993), for the proposition that an attorney who acts as a scrivener in drafting an agreement that reduces to writing an understanding that has been reached between two parties can nevertheless be negligent for failing zealously to advocate for one of the parties' positions during the drafting process. In *Layton,* however, the attorney was found negligent based largely on the fact that the attorney also did not "ever inform the parties that she was acting only as a scrivener," such that "it was reasonable for [the plaintiff] to expect that [the attorney] was acting on his behalf as a lawyer." *Id.* at 942. The court explained that "[i]f a lawyer acts in a transaction as a scrivener, it is only reasonable that the parties be informed that the lawyer is acting as a scrivener and not as an attorney for either party." *Id.*

In this case, the Waiver Letter clearly set forth the parties' understanding of Rubin's role and the Waiver Letter refutes any contention that the plaintiff could have reasonably believed that Rubin was acting as the plaintiff's private attorney during the mediation process. *See also* Rubin Dep. 95, 127–28. Rubin was not acting as an attorney for either the plaintiff or Srader, and Rubin made this fact clear to the parties through the Waiver Letter. The Waiver Letter was also clear that Rubin was to "act for both" Srader and the plaintiff, and not just for the plaintiff. Waiver Letter. Hence, Rubin was not providing legal representation to two clients with adverse interests. *Compare* New York Code of Professional Conduct DR 5–105 (setting out rule and exceptions in connection with conflicts of interest in legal representation and conditions for simultaneous legal representation).

---

**2.** The parties dispute whether the plaintiff's expert evidence is admissible. It is unnecessary to address this issue here, however, because this evidence is not probative of any actionable negligence, for the reasons discussed below.

■ There is, moreover, no question that an attorney can act as a neutral mediator. Ethical Consideration 5–20 states that:

[a] lawyer is often asked to serve as an impartial arbitrator or mediator in matters which involve present or former clients. The lawyer may serve in either capacity after disclosing such present or former relationships. A lawyer who has undertaken to act as an impartial arbitrator or mediator should not thereafter represent in the dispute any of the parties involved.

Although the plaintiff bases part of its negligence claim on the contention that Rubin did not adequately disclose all of his former relationships to the plaintiff, the Waiver Letter clearly disclosed the fact that Rubin would be acting as a mediator and the parties explicitly waived any conflict issue by signing the Waiver Letter. *See* Waiver Letter; *see also* Rubin Dep. 143–44. Rubin had not previously represented Srader, although he had represented the plaintiff. This latter fact cannot form the basis for negligence claim by the plaintiff, however, because the plaintiff was aware that Rubin had represented him, and there is no claim that this fact was not disclosed to Srader. *See* Affidavit of Joseph Rubin sworn to June 25, 2001 ("Rubin Aff."), at ¶¶ 3, 6, attached as Ex. B to Affirmation of Marc Jonas dated November 8, 2001 ("Jonas Aff").

■ The plaintiff argues that Rubin failed to disclose a prior relation with Srader, but there is no evidence in the record that Rubin ever represented Srader or even knew him prior to the mediation. *See, e.g., id.* at ¶ 3; Affidavit of Ronald Srader sworn to April 6, 2001 ("Srader Aff."), at ¶ 2, attached as Ex. C to Jonas Aff. The plaintiff's sole evidence relating to a prior relation between Rubin and Srader indicates that the two may have met once at a meeting, but such a meeting would not have created a conflict that needed to be disclosed.[3] The plaintiff also argues that Rubin was negligent in failing to disclose that Rubin had represented Ivan Rempel, who conducted business with both the plaintiff and Srader and was known to both, and who helped conduct the mediation. *See* Rubin Dep. 157–58. Rempel was not a party to the mediation, however, and Rubin was not representing Rempel's interests either as an attorney or as a mediator during these proceedings. Hence, Rubin was not required to disclose his prior representation of Rempel. In any event, there is uncontroverted evidence in the record that both parties knew of Rubin's prior representation of Rempel, and there is no evidence indicating that this prior representation in any way affected Rubin's ability to perform as an impartial mediator as between the interests of the plaintiff and Srader. *See* Deposition of Clark Chang dated September 20, 2001 ("Chang Dep."), at 91–92, attached as Ex. E to Strasser Aff.; Srader Aff. ¶ 5; Affidavit of Ivan Rempel sworn to December 20, 2001, at ¶¶ 5, 6.

■ There is almost no law on what the appropriate standard of care is, if any, for a mediator who helps negotiate a settlement between parties. However, a mediator cannot be held to a higher degree of skill and care than that commonly exercised by ordinary members of the relevant

---

**3.** Srader testified at his deposition that he met Rubin once at a meeting with Clark Chang in which Rubin was representing Chang. *See* Srader Dep. at 164. This meeting would not have constituted a prior representation of Srader by Rubin, however, and Chang would have been aware of the meeting. Rubin has testified that he does not remember meeting Srader until March of 1999, and both Rubin and Srader testified that they did not have any close personal relation or attorney-client relation. Rubin Dep. 36; Srader Aff ¶ 2; Rubin Aff ¶ 3.

mediation community. Although there are a number of different kinds of mediation that parties may seek, "[t]he role of a mediator is often that of the honest broker who must suggest a solution giving advantage to both sides and minimizing the price that each must pay." *In re Joint Eastern and Southern Districts Asbestos Litig.,* 737 F.Supp. 735, 739 (E.D.N.Y.1990). Such was the case here, where the parties explicitly retained Rubin not to provide legal assistance but rather to "assist [the parties] in finding an amicable resolution to [their] differences relating to the trademark Margaret Jerrold and the business relating thereto." Waiver Letter. There can be no claim that Rubin failed to satisfy this duty because Rubin did assist in bringing these parties together and did successfully draft an agreement that was executed by both parties and that settled their dispute.

■ The plaintiff argues that Rubin was nevertheless negligent in his capacity as a mediator because he failed to advise Rubin that he should obtain his own counsel during the mediation. Putting aside the fact that there is no authority for the proposition that a reasonable mediator must render such advice at the risk of personal liability, there is also no factual basis for the contention that Rubin failed to give such advice. The Waiver Letter clearly indicates that Rubin had "advised [the plaintiff and Srader] that [they] should be represented by different attorneys." Waiver Letter; *see also* Rubin Dep. 61–62.

The plaintiff tries to circumvent the language of the Waiver Letter by citing isolated portions of Rubin's deposition in which Rubin testified that he told the plaintiff, after having drafted the Settlement Agreement, that "*if* you have an attorney review it with the attorney." Rubin Dep. 68 (emphasis added). However, the language of the Waiver Letter

clearly advised the plaintiff that he should be represented by counsel, and Rubin also testified much more explicitly that he:

asked [Chang] had he read the agreement. I asked him to again discuss it now. Again, I say I don't know if he mentioned you by name [referring to the deposing attorney, Mr. Strasser]. That he had another lawyer that he did other things with. I said to him, please, whoever the other lawyer is or if it's Mr. Strasser, I can't remember the timing, I told him to go check it out. Be sure you're okay with this whole thing from your point of view. Make sure. I'm doing my best to mediate this thing, but I'm not acting as your lawyer. So go get a lawyer if you want. And I was emphatic with him. And I also did the same for Srader. I made those phone calls. And that was the conversation I had. But I also asked him if he had any comments on the agreement. But I said, get back to me. And I think they did get back to me later with some changes.

Rubin Dep. at 168. The plaintiff has not cited any evidence that contradicts Rubin's testimony, and, in any event, the Waiver Letter provided the plaintiff with adequate advice regarding the importance of seeking independent counsel during the mediation.

■ The plaintiff argues that Rubin was also negligent as a mediator for failing to advise him that the Settlement Agreement would allegedly allow Srader to contest monies previously known to be owed to the plaintiff under the Notes; failing to investigate critical facts relevant to the amounts owed under the Notes and the obligations thereunder; and failing to draft the Settlement Agreement so as to foreclose such a dispute. These arguments misconstrue the scope of the Settlement Agreement, the scope of the dispute

that the Agreement purported to settle, and the scope of Rubin's role as a mediator.

It is undisputed that at the time of the mediation, Srader admitted that he owed monies to the plaintiff under the Notes. Srader Dep. 154–56; Rubin Dep. 115–16. The primary dispute between the parties concerned whether Srader could continue using the Margaret Jerrold trademark and the precise conditions under which Srader could continue licensing and could ultimately acquire the trademark from the plaintiff. *See* Rubin Dep. 109, 141. The Settlement Agreement set up a payment schedule for the Loan and made payment of the Loan a condition for Srader's continuing license and acquisition of the Margaret Jerrold trademark, but it did not purport to alter or modify the parties' rights with regard to the amounts owed under their previous agreements. To the contrary, the Settlement Agreement specifically noted that the obligations relating to the Loan were separate and apart from the Settlement Agreement. Settlement Agreement § 2.06

Srader was also apparently unwilling to accept that he owed the plaintiff $712,640.45 under the Notes at the time of the mediation, and instead took the position that he wanted to have an independent accountant verify the sums before he could commit to a precise amount. *See, e.g.,* Rubin Dep. 85, 111–12. The Settlement Agreement set up a neutral mechanism to handle any such outstanding disputes, whereby the parties could have their independent accountants determine the appropriate amounts owed, and could have any discrepancies settled by using a third and independent accountant. The Settlement Agreement thereby reasonably settled the only disputes that had arisen between the parties at the time. Once having found an amicable resolution to the outstanding disputes between the parties,

Rubin had no duty as a mediator to investigate facts relating to matters that were collateral to his mediation tasks.

The plaintiff complains that Rubin should have specifically mentioned the Notes and fixed the amounts owed on them, but the Settlement Agreement did explicitly acknowledge the existence of the Loan, and the plaintiff and Srader were unable to agree on the amounts owed on the Loan. Instead, the parties agreed to a neutral mechanism for determining the amount of the Loan, and there is no basis for the claim that Rubin even could have obtained an agreement to a fixed sum.

 In any event, to the extent that Srader has attempted to raise new counterclaims against the plaintiff under the Settlement Agreement, Srader's claims are based not on any provision in the Settlement Agreement but rather on obligations allegedly arising out of the parties' previous business arrangements, including the 1987 Agreement. Whether Srader can in fact raise such claims as offsets to the Loan, and whether the claims are valid, are questions that are currently being arbitrated. There is, however, no basis for the claim that the Settlement Agreement played any role in allowing Srader to dispute the amounts allegedly owed between the parties on any grounds that were not already available to Srader. The bare use of the neutral mechanism for determining the amounts owed to the plaintiff could not, with any reasonable foreseeability, be the cause of legally cognizable injury to the plaintiff. Hence, the Settlement Agreement is not the proximate cause of any damages to the plaintiff, and Rubin cannot be found liable for failing to advise the plaintiff that Srader might seek to dispute the amounts owed under the Loan or for failing to stipulate to the amounts owed in the Settlement Agreement. *Cf., e.g., Thaler & Thaler,* 617 N.Y.S.2d at 606–

07 (dismissing legal malpractice claim on motion for partial summary judgment when there was no evidence that different conduct by the attorney could have helped prevent the injury alleged); *Franklin,* 606 N.Y.S.2d at 164 ("We find that the IAS court properly dismissed the legal malpractice causes of action of the plaintiff's complaint, with prejudice, since the complaint failed to set forth the requisite allegation, that 'but for' the attorneys' alleged malpractice, the plaintiff would not have sustained some actual ascertainable damages.") Indeed, the Settlement Agreement provided a neutral dispute resolution mechanism, which should provide the plaintiff with an adequate mechanism for vindicating any legitimate claims he has raised against Srader in this action.

Finally, the plaintiff raises a number of claims asserting that Rubin was negligent due to some of his post-drafting conduct. The plaintiff has not indicated how any of this conduct could have caused the plaintiff any injury. Ethical Consideration 5–20 does state that "[a] lawyer who has undertaken to act as an impartial arbitrator or mediator should not thereafter represent in the dispute any of the parties involved," but there is no evidence that Rubin has represented the plaintiff or Srader in any of these continuing disputes. Hence, the plaintiff's claims must also be dismissed insofar as they are based on any post-mediation conduct.

In sum, the plaintiff has not identified any conduct on the part of Rubin that fell below any applicable standards of care and that could give rise to a claim for negligence. The plaintiff's fourteenth and fifteenth causes of action are therefore dismissed.

### CONCLUSION

For the foregoing reasons, the defendant Rubin's motion for summary judgment is granted and the remaining claims against Rubin are dismissed. There being no further claims pending in this case, the Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**