■ ESTATE OF LOUISE NEVELSON, Deceased, et al., Appellants, v CARRO, SPANBOCK, KASTER & CUIFFO et al., Respondents. [686 NYS2d 404] —Judgment, Supreme Court, New York County (Edward Lehner, J.), entered April 13, 1998, dismissing the complaint and bringing up for review an order, same court and Justice, entered April 9, 1998, which, upon conversion pursuant to CPLR 3211 (c), granted defendants' motion for summary judgment and dismissed plaintiffs' complaint, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated. Appeal from the order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

This legal malpractice action against the defendant law firm Carro, Spanbock, Kaster & Cuiffo (CSK&C), and the individual partners thereof, was commenced after the Internal Revenue Service (IRS) assessed millions of dollars in estate taxes against the estate of deceased sculptor Louise Nevelson, as well as gift taxes against her son and the executor of her estate, Mike Nevelson.

Plaintiff Sculptotek, Inc. (Sculptotek), a corporation wholly owned by Mike Nevelson, was created upon the advice of CSK&C for the purpose of organizing the financial affairs of Louise Nevelson, and in an attempt to cause her artwork and the income from it to pass outside of her taxable estate. After

Ms. Nevelson's death in 1988, the IRS determined that the corporate entity Sculptotek should be disregarded, as it was a sham corporation used to gift the decedent's income and assets to her son, and that all of the assets of Sculptotek should have been included in the sculptor's gross estate. It further determined that all of the salary paid by Sculptotek to her son, Mike Nevelson, between 1977 and 1988 constituted taxable gifts. This IRS determination was based primarily upon a finding that Sculptotek failed to adequately compensate the decedent artist, whose works generated the bulk of the assets held by the corporation. In addition to the estate and gift taxes themselves, substantial interest and penalties were assessed.

Plaintiffs' complaint asserted three causes of action, one for attorney malpractice, the second for breach of fiduciary duty, and a third for breach of contract. The crux of plaintiffs' claim was that the estate plan that CSK&C recommended and plaintiffs implemented could not survive IRS scrutiny, and that CSK&C never advised plaintiffs of any risks of potential gift or estate tax liability that could arise based upon the level of compensation that Sculptotek paid to Louise. Plaintiffs also asserted that CSK&C negligently prepared the estate tax "Form 706" upon the decedent's death, and negligently advised them in connection with an action brought against them by the decedent's companion of 25 years, Diane MacKown.

An action to recover damages for legal malpractice requires proof that: (1) the attorney was negligent; (2) the negligence was the proximate cause of the loss sustained; and (3) the plaintiff sustained actual damages as a result of the attorney's negligence (*Khadem v Fischer & Kagan*, 215 AD2d 441; *Franklin v Winard*, 199 AD2d 220). Negligence or malpractice exists where the attorney failed to exercise that degree of skill commonly exercised by an ordinary member of the legal community (*Thaler & Thaler v Gupta*, 208 AD2d 1130; *Marshall v Nacht*, 172 AD2d 727).

Generally, plaintiffs in professional malpractice actions proffer expert opinion evidence on the duty of care to meet their burden of proof in opposition to a properly supported summary judgment motion (*see, e.g., Thaler & Thaler v Gupta*, 208 AD2d 1130, *supra*; *Brown v Samalin & Bock*, 168 AD2d 531). However, the requirement that plaintiff come forward with expert evidence on the professional's duty of care may be dispensed with where "ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service" (*S & D Petroleum Co. v Tamsett*, 144 AD2d 849, 850, citing *Kulak v Nationwide Mut. Ins. Co.*, 40 NY2d 140,

148). In this case, contrary to the conclusion reached by the IAS Court, the issue is not whether CSK&C could have come up with a better plan but whether CSK&C departed from the requisite standard of care in failing to adequately advise the Nevelsons and Sculptotek that their failure to substantially compensate the decedent could result in adverse tax consequences under the plan that they recommended.

Moreover, assuming *arguendo* expert testimony is required to establish the requisite violation of the professional standard of care in this case, on a motion for summary judgment, the initial burden of coming forward with evidence establishing a prima facie right to judgment is on the movants (*see, e.g., Estate of Burke v Repetti & Co.*, 255 AD2d 483). In this case, defendants offered only conclusory, self-serving statements with no expert or other evidence which would tend to establish, prima facie, that they did not depart from the requisite standard of care. Nor may it be said, as a matter of law, that defendants had no obligation to advise Mr. Nevelson and/or Sculptotek with respect to the level of compensation that would pass muster under an IRS audit, particularly in light of the fact that one of the primary purposes for setting up the corporate structure was to protect the decedent's income and shelter her assets from estate and gift taxation.

Under the circumstances, since defendants did not establish a prima facie right to judgment, plaintiffs' obligation to come forward with expert evidence to rebut their prima facie case was not triggered, and it was error to dismiss the complaint on that basis.

With respect to proximate cause, plaintiffs are required to demonstrate that " 'but for' the attorneys' alleged malpractice, the plaintiff would not have sustained some actual ascertainable damages" (*Franklin v Winard*, 199 AD2d 220, 221, *supra*, citing *Stroock & Stroock & Lavan v Beltramini*, 157 AD2d 590, 591). However, the IAS Court erred in concluding that plaintiffs' failure to submit expert evidence of a better estate planning device mandated dismissal. Even in the absence of a demonstrated better estate plan, plaintiffs have alleged damages beyond the tax liabilities they had sought to avoid, in addition to the sums charged as interest by the IRS (which is not a recoverable item of damages [*see, Alpert v Shea Gould Climenko & Casey*, 160 AD2d 67]). Moreover, the internal memorandum submitted by plaintiffs indicates that defendants were aware that there might be a potential problem in the way Louise Nevelson was being compensated prior to her death and the IRS review, and their failure to act may be a basis for impos-

ing liability (*see, Wittich v Wallach*, 201 AD2d 558; *Canavan v Steenburg*, 170 AD2d 858). Plaintiffs' showing is sufficient to create a question of fact on the issue of proximate cause, permitting the inference that ascertainable damages would not have occurred but for the alleged negligence.

Defendants' additional assertion, that Mike Nevelson simply failed to follow their advice, and that, therefore, any losses generated were solely of his creation, is not adequately supported by the one May 9, 1975 letter outlining hypothetical compensation rates. Moreover, it amounts to a claim of plaintiffs' comparative negligence, which is for the jury (*see, Lama Holding Co. v Shearman & Sterling*, 758 F Supp 159, 162).

Finally, there is no merit to defendants' argument that plaintiffs lack standing to bring an action against them. CSK&C represented all of the plaintiffs and advised each one of them with respect to variously related matters over the years in question. They assisted Mike Nevelson in setting up Sculptotek, they prepared the pension and medical benefit plans for the corporation, they kept the minute book for the corporation, they filed the estate tax return, and they advised plaintiffs with respect to the defense of the MacKown action. Defendants' standing argument was therefore properly rejected by the IAS Court. Concur—Nardelli, J. P., Lerner, Mazzarelli and Saxe, JJ.