**Angelo NOBILE, Plaintiff,**

v.

**Milton SCHWARTZ; Grant, Hermann, Schwartz & Klinger; Paul E. Kerson; and Leavitt, Kerson & Leffler, Defendants.**

No. 98 Civ. 2375(RWS).

United States District Court,
S.D. New York.

May 28, 2003.

Jaroslawicz & Jaros, New York, NY, By: Robert J. Tolchin, for Plaintiff, of counsel.

Babchik & Young, White Plains, NY, By: Norman R. Ferren,X, for Defendants Hermann, Schwartz & Klinger, of counsel.

L'Abbate, Balkan, Colavita & Contini, Garden City, NY, By: Anthony P. Colavita, Scott E. Kossove, for Defendants Paul E. Kerson and Leavitt, Kerson & Leffler, of counsel.

## OPINION

SWEET, District Judge.

The plaintiff Angelo Nobile ("Nobile") has renewed his motion for partial summary judgment with respect to his malpractice claims against individual defendants Milton Schwartz ("Schwartz") and Paul E. Kerson ("Kerson"), and law firm defendants Grant, Hermann, Schwartz & Klinger ("Grant Hermann") and Leavitt, Kerson & Leffler ("Leavitt Kerson") (collectively, the "Defendants"). For the reasons set forth below, the motion is denied, factual issues having been presented.

### Prior Proceedings

This action was filed on April 2, 1998 by Nobile against Schwartz and his firm, Grant Hermann; and Kerson, and his firm, Leavitt Kerson, arising out of their representation of Nobile in his claims against Elba Lo Buono Mangiaregna ("Elba Mangiaregna"), NOL Realty Corp. ("NOL"), the Estate of Joseph Testani ("Testani Estate"), Diego Mangiaregna ("Diego Mangiaregna") and Victor Buglione ("Buglione") for five causes of action. The complaint alleged: (1) negligence by the Defendants in their

representation of Nobile's claims with respect to actions on his behalf in the Supreme Court of the State of New York, County of Queens (the "State Court Action"), in the Surrogate's Court, County of Queens (the "Surrogate's Court Action"); (2) negligence with respect to a mortgage note in the amount of $100,000 of July 3, 1987 (the "Mortgage Note"); (3) a breach of the Defendants' implied obligation to provide competent representation; (4) a violation of New York Judiciary Law § 487; and (5) an accounting for legal fees.

The Defendants moved for summary judgment, and Nobile cross-moved for partial summary judgment. The motion of the Defendants was granted on grounds of statute of limitations by an order and opinion of November 29, 2000.

On January 23, 2003, the Second Circuit vacated the order of dismissal, finding that the statute of limitations issue presented an issue of fact with respect to continuing representation precluding summary judgment, and remanded for further proceedings. *Nobile v. Schwartz,* 56 Fed.Appx. 525, 2003 U.S.App. LEXIS 1019 (Jan. 23, 2003).

Nobile renewed his motion for partial summary judgment seeking a determination that the Defendants committed malpractice in connection with the Surrogate's Court Action and the State Court Action, and to dismiss the Defendants' evidentiary defenses involving the Federal Bureau of Investigation ("FBI") and the proof of the payment of funds by Nobile.

The motion was heard and marked fully submitted on April 30, 2003.

### The Facts

The facts are set forth in the Local Rule 56.1 Statements of the parties and in affidavits subsequently submitted.

Nobile is a successful real estate developer and businessman in Argentina. In 1984, he became interested in investing money in real estate in the United States and met Elba Mangiaregna, a real estate developer and investor in New York, and invested $634,000 in a venture formed with Elba Mangiaregna, NOL, and received fifty-five percent of its shares. In 1988, Nobile concluded that Elba Mangiaregna was cheating him and sought to end his relationship with NOL, recoup his investment, and take his profits.

Unbeknownst to Nobile, Elba Mangiaregna had caused valuable parcels of NOL real property to be transferred to Joseph Testani ("Testani") without proper or fair compensation being paid to NOL. Nobile believed that Elba Mangiaregna had an arrangement with Testani to share the proceeds of any property looted from NOL.

Nobile retained Schwartz and his firm Grant Hermann to advise him and to take the appropriate steps with respect to NOL and Elba Mangiaregna. Schwartz arranged for Kerson and his firm Leavitt Kerson to serve as litigation counsel.

A retainer agreement was prepared which provided for a fee of fifteen percent for any recovery pretrial and twenty-five percent for any recovery following commencement of trial preparation, and requiring that Nobile pay $15,000 up front against such contingency fees, plus disbursements. The retainer further provided that Schwartz and his firm would "supervise" the case, and that the case would be "managed" by Kerson.

Thereafter, Kerson commenced a proceeding on Nobile's behalf entitled *Matter of NOL Realty Corporation,* Supreme Court, Queens County, Index Number 11025/88, which sought and obtained the judicial dissolution of NOL (the "Dissolution Proceeding"). The Court's decision in

the NOL dissolution proceeding provided that any other remedies would have to be raised in another proceeding.

Meanwhile, Testani died on February 23, 1987.

Kerson then commenced a second action on Nobile's behalf in 1989, entitled *Angelo Nobile v. Estate of Joseph Testani, Elba Lobuono Mangiaregna, Diego Mangiaregna and Victor A. Buglione, Esq.*, Supreme Court, Queens County, Index Number 16267/89.

The complaint in the State Court Action asserted three causes of action. The first cause of action sought damages for the looting of NOL. The second cause of action sought damages against Buglione, who was an attorney representing NOL who had assisted and participated in the looting of NOL, particularly by preparing the paperwork and (allegedly) authenticating forgeries of Nobile's signature. The third cause of action sought damages against Diego, Elba Mangiaregna's brother, for assault relating to his having threatened Nobile with a gun in an effort to induce Nobile to settle his claims against Elba Mangiaregna.

Simultaneously, in November 1989, Kerson appeared on behalf of Nobile in Surrogate's Court, Queens County and made a claim on Nobile's behalf against the estate of Testani with respect to the moneys looted from NOL by Elba Mangiaregna with the assistance of the decedent Testani.

The defendants in the State Court Action then moved to dismiss Nobile's claims. The Supreme Court (Graci, J.) issued an order dated February 21, 1990, which held as follows:

a. Nobile's claims regarding the looting of NOL were dismissed without prejudice to the commencement of a shareholder's derivative action, since they were essentially shareholder's derivative claims rather than individual claims.

b. Nobile's legal malpractice claims against Buglione were dismissed both because they should have been brought as shareholder's derivative claims and because the court concluded that the actions against Buglione would have been time-barred by the three-year statute of limitations for negligence actions.

c. Nobile's claims for assault against Diego Mangiaregna were not dismissed.

Neither Schwartz nor Kerson ever commenced a shareholder's derivative suit for Nobile, and the six-year statute of limitations for commencing a shareholder's derivative suit alleging fraud has lapsed. Schwartz and Kerson did not prosecute Nobile's claims against Diego Mangiaregna.

The State Court Action was marked "disposed" and "discontinued" by the clerk on June 19, 1995. According to Kerson, this course of action with respect to the State Court Action was discussed with and approved by Nobile.

In August 1990, Testani's executor wished to resign and Testani's widow wished to be appointed administratrix C.T.A. The attorney for the Testani Estate asked Kerson to enter a stipulation, which provided as follows:

1. That the supplemental intermediate accounting of N. MICHAEL LO RUSSO is allowed and approved without prejudice to the claimants CAMILLE PETITO, JOSEPH PETITO and ANGELO NOBILE continuing to assert their claims subject to further order of this Court.

On or about November 19, 1990, Queens County Surrogate's Court issued an order in accounting based in part on the August

stipulation appointing Testani's widow as administratrix C.T.A. of the Testani Estate. In the prefatory paragraph of that order reference is made to Nobile's claims as follows:

> ... and said accounting having shown normal rejections by Executor of a pending claim by one ANGELO NOBILE against decedent which is the subject of a Supreme Court action ...

On or about December 18, 1990, Schwartz wrote to Nobile advising him the Court had indicated that the State Court Action would have to be recommenced as a shareholder's derivative action, that it would be necessary for Nobile to prove how much he invested in NOL, that he and Kerson had concluded that Nobile could not offer clear proof of his investment in NOL, and advised Nobile that no shareholder's derivative action would be commenced. Schwartz also advised Nobile that with respect to the Testani Surrogate's Court proceeding, essentially the same claims were being advanced and that without better proof of Nobile's investment those claims would ultimately have to be discontinued as well.

On or about April 29, 1991, Schwartz again wrote to Nobile advising him that in order to bring a shareholder's derivative suit it would be necessary to prove Nobile's original investment, that any effort to pursue his claims without proof of his original investment could lead to a variety of detrimental consequences, including the imposition of a fine by the court, that although his claims were for the moment continuing in the Surrogate's Court proceeding, once the Surrogate's Court sought proof of Nobile's original investment in NOL those claims would have to be discontinued as well.

At a meeting on October 20, 1992 with Kerson and Schwartz's associate Sally Erikson, Esq. ("Erikson"), Nobile signed a letter previously prepared for him by Schwartz, bearing the date April 3, 1992, which instructed Kerson, Schwartz and their firms not to proceed with Nobile's claims against Elba Mangiaregna, Diego Mangiaregna or Buglione, and also stated in Spanish as follows: "[e]ntiendo que la accion por la suma de U.S. $1,200,000.00 contra la Sucesion de Testani sigue adelante," ("I understand that the claim for the sum of U.S. $1,200,000.00 against the estate of Testani is continuing ahead.") Whether or not the advice was erroneous is a contested issue of fact.

According to the Defendants, they advised Nobile not to pursue his claims because doing so would allegedly have exposed Nobile to scrutiny by the FBI, which the Defendants believed was investigating the affairs of Testani. A response by the FBI under the Freedom of Information Act ("FOIA") stated that the FBI was not investigating Testani. The FBI cautioned, however, that the letter "should not be considered an indication of whether or not records responsive to your request exist in FBI files." According to the Defendants they were advised by Testani's accountants that his records were held by the FBI.

According to Nobile, he and his son Miguel tried unsuccessfully from Argentina to call Schwartz, who on a few occasions told Nobile and his son that they had to be patient because the court cases can take a long time.

Finally, in or about October 1997, Nobile's son Marcelo visited Schwartz's offices to determine the status of his father's claims and learned that no action had been taken on Nobile's behalf for years. Upon learning this, Nobile discharged Schwartz and Kerson, and Marcelo took back the files from Schwartz.

In Nobile's file turned over by the Defendants was the Mortgage Note.

The Defendants have submitted an opinion of Bertram R. Gelfand, Esq. ("Gelfand"), a former Surrogate, that the claim of Nobile in the Surrogate's Court Action is not barred by the applicable statute of limitations, as well as affidavits stating their belief that Nobile was at risk with respect to potential violations of law, including entry into the United States with undeclared cash. According to Defendants, Nobile concurred with their recommendations in connection with the State Court Action and abandoned the Surrogate's Court Action because of the problems of proof, possible exposure to liability and issues of collectability.

### *Discussion*

### I. *Standard of Review*

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York,* 72 F.3d 1051, 1060–61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir.2002).

### II. *Legal Malpractice Claims*

■ The elements of legal malpractice under New York law are: (1) a duty, (2) a breach of the duty, and (3) proof that the actual damages were proximately caused by the breach of the duty. *Ocean Ships, Inc. v. Stiles,* 315 F.3d 111, 117 (2d Cir. 2002) (*quoting Tinelli v. Redl,* 199 F.3d 603, 606 (2d Cir.1999)). Nobile addresses only the second and third elements of breach and proximate cause in the instant motion.

■ The second element requires a showing that the defendant "failed to exercise that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community." *675 Chelsea Corp. v. Lebensfeld,* 1997 WL 576089, at *2 (S.D.N.Y. Sept.17, 1997) (*quoting Hwang v. Bierman,* 206 A.D.2d 360, 614 N.Y.S.2d 51, 52 (2d Dep't 1994)). Such showing in a summary judgment motion generally requires expert opinion evidence, *Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo,* 259 A.D.2d 282, 686 N.Y.S.2d 404, 405–06 (1st Dep't 1999) (*citing S & D Petroleum Co. v. Tamsett,* 144 A.D.2d 849, 534 N.Y.S.2d 800 (3d Dep't 1988)), but the requirement "may be dispensed with where 'ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service.'" *Id.; see also Sallam v. Nolan,* 116 F.3d 466, 1997 WL 311607, at *2 (2d Cir.1997) ("Unless a juror's ordinary experience provides sufficient basis to assess the adequacy of the professional service, or the attorney's conduct falls below any standard of due care, expert testimony is necessary to establish the attorney acted negligently.") (*citing Greene v. Payne, Wood & Littlejohn,* 197 A.D.2d 664, 602

N.Y.S.2d 883, 885 (2d Dep't 1993)); *Clanton v. Vagianellis,* 192 A.D.2d 943, 596 N.Y.S.2d 593, 595 (3d Dep't 1993) ("[I]t is not without significance that no expert affidavit was submitted on the motion by plaintiff attesting to the standard of professional care and skill that defendant allegedly failed to meet, a showing which is necessary to the demonstration of merit in a legal malpractice case.").

█ To establish the third element, a plaintiff must show that but for the defendant's negligence, he or she would have prevailed in the underlying action or would not have sustained any damages. *Davis v. Klein,* 88 N.Y.2d 1008, 1009–10, 648 N.Y.S.2d 871, 671 N.E.2d 1268 (1996); *Ashton v. Scotman,* 260 A.D.2d 332, 686 N.Y.S.2d 322 (2d Dep't 1999).

Nobile seeks summary judgment on elements of his legal malpractice claims arising from the actions taken by the Defendants in relation to the Surrogate's Court Action and the State Court Action.

#### A. *Surrogate's Court Action*

As part of Count One, Nobile claims that the Defendants acted negligently in their representation of his claim with respect to actions in the Surrogate's Court Action in that they failed to prosecute the case and it is now time-barred. Nobile seeks judgment that he has satisfied the second element regarding this claim, *i.e.* that the Defendants breached their duty because they permitted the action to become time-barred.

█ The statute of limitations applicable to a claim to compel a legal representative to account and pay is six years.

*E.g., Matter of Barabash,* 31 N.Y.2d 76, 80, 334 N.Y.S.2d 890, 286 N.E.2d 268 (1972); *Matter of Meyer,* 757 N.Y.S.2d 98 (2d Dep't 2003); *Matter of Seaman,* 146 Misc.2d 563, 565–66, 551 N.Y.S.2d 454 (N.Y.Sur.1990). The statute begins to run only after the account is judicially settled or there is an open repudiation by the fiduciary of his obligation to administer the estate to the knowledge of the beneficiary. *Barabash,* 31 N.Y.2d at 80, 334 N.Y.S.2d 890, 286 N.E.2d 268; *Seaman,* 146 Misc.2d at 565, 551 N.Y.S.2d 454 (collecting cases). "The law requires proof of a repudiation by the fiduciary which is clear and made known to the beneficiary." *Barabash,* 31 N.Y.2d at 80, 334 N.Y.S.2d 890, 286 N.E.2d 268.

█ Here, there is no evidence that the account has been judicially settled. In addition, there is no evidence of repudiation by the fiduciary to administer the estate and of which Nobile is aware.[1] As a result, there is no evidence that the statute of limitations has begun to run and therefore the Surrogate's Court Action is not time-barred. Further, there is no need to refer to the Gelfand expert affidavit, or deal with Nobile's objections thereto.

Nobile has failed to establish the second element of his malpractice claim arising from the Surrogate's Court Action. His motion is therefore denied.

#### B. *State Court Action*

The second half of Count One alleges that the Defendants acted negligently in representing Nobile's claims in the State Court Action. The three claims were the following: (1) a claim against Elba Mangiaregna, the Testani Estate, Buglione and

---

1. The parties concur that Nobile's claims were rejected by the fiduciary of the Testani estate in 1989, although they disagree as to when in 1989 it occurred. Such rejection does not constitute a repudiation of the fiduciary's duty to administer the estate. Repudiation requires that the trustee "assert[ ] and exercise[ ] individual ownership over the trust property." *Matter of Zilkha,* 174 A.D.2d 331, 570 N.Y.S.2d 807, 810 (1st Dep't 1991).

Diego Mangiaregna regarding the "looting" of NOL Corp.; (2) a legal malpractice claim against Buglione; and (3) an assault claim against Diego Mangiaregna.

### 1. *The Claim Regarding NOL Corp. and the Malpractice Claim*

Nobile seeks a judgment that he has satisfied the second and third prongs of the legal malpractice standard in that the Defendants' actions were a breach of the applicable standard of care and a proximate cause of as-yet-unascertained damages.

### a. *Breach of the Duty*

■ Judge Graci dismissed Nobile's claims regarding the NOL Corp. because such claims should have been brought as a shareholder's derivative action. Nobile claims that it was a per se breach of the duty of care for the Defendants not to have filed a shareholder's derivative action or not to have filed an appeal of the Order. Judge Graci also dismissed the legal malpractice case on statute of limitations grounds. Nobile contends that Judge Graci was incorrect and that it was a per se breach of the duty of care for the Defendants not to have appealed that ruling.

As an initial matter, the Defendants contend that their decision not to appeal and not to commence a shareholder's derivative action were made with Nobile's consent. In addition, they contend that Nobile refused to provide evidence necessary to pursue a shareholder's derivative suit and that he refused to authorize or pay for an appeal of the dismissal of his claims against Buglione. These contested facts at the very least raise an issue as to whether the Defendants acted appropriately.

■ Nobile has also failed to present any expert testimony that the failure to file a derivative suit or to appeal Judge Graci's order was a breach of the duty of due care. Further, such actions were not so egregious that a fact-finder on the current record could determine without recourse to expert testimony that they breached the applicable standard of care.

As a result, Nobile has failed to establish that the Defendants breached the applicable standard of care in failing to file a derivative suit and/or failing to appeal from Judge Graci's ruling.

### b. *Proximate Cause*

Nobile argues in support of his argument that he has proven proximate cause in that a derivative suit could have been filed, and that Judge Graci's order would have been reversed. Yet he fails to establish the crux of the legal malpractice proximate cause question: that Nobile would have been successful in the ultimate shareholder's derivative suit and legal malpractice case. As a result, he has also failed to establish proximate cause.

For the above reasons, Nobile's motion seeking a ruling that he has established breach and proximate cause regarding these claims is denied.

### 2. *Assault Claim*

Nobile argues that he has established the breach element of legal malpractice with respect to the assault claim. Unlike the other two claims, the assault claim was not dismissed by the order discussed above. Nobile argues that the failure to prosecute the action was a *per se* violation of the applicable standard of care.

As above, an issue of fact is presented based on Kerson's testimony that Nobile consented to the Defendants' actions with regard to the State Court Action.

In addition, the Schwartz defendants contend that the action remains viable, as it has not yet been marked off the court's

post note of issue trial calendar. Nobile failed to reply to this contention in his papers. While it is unlikely that a trier of fact would determine that a failure to prosecute for approximately five and one-half years is an excusable neglect, such actions are not so beyond the pale that such decision could be arrived at on this motion. An expert's affidavit would have assisted immeasurably in reaching such a conclusion. As a result, it cannot be said that the failure to prosecute was a *per se* violation of the duty of care.

For the above reasons, Nobile's motion for judgment that he has satisfied the second element of his claim is denied.

### III. *Defenses Present Factual Issues*

Nobile finally moves for summary judgment against two evidentiary defenses. The first defense alleges that the Defendants were reasonable in advising Nobile not to pursue his claims because such claims purportedly would have exposed him to the scrutiny of the FBI. Second, the Defendants contend that they did not pursue the shareholder's derivative claim because Nobile failed to prove his investment.

#### A. *The FBI Investigation*

 The FBI has stated pursuant to a Freedom of Information Act request by Nobile that it was not investigating Testani, as was purportedly believed by the Defendants. In that letter, however, the FBI cautions that the letter "should not be considered an indication of whether or not records responsive to your request exist in FBI files." Thus, it remains possible that Testani was targeted and such is an issue of fact.

Even if it were established that the FBI was not investigating Testani, however, it would not vitiate this defense, as what is at issue is whether the Defendants acted within the applicable standard of due care based on the information they possessed. While it is true that the Defendants acted upon very little information, their behavior was not so unreasonable that this Court may determine that the defense should be dismissed on these grounds, particularly in the absence of any expert testimony in support of Nobile's contentions.

#### B. *Lack of Proof of Investment*

 Nobile argues that there was no need for him to prove how much money he had invested in NOL in order to file a derivative suit, but that a shareholder's certificate is sufficient. Further, Nobile had a shareholder's certificate stating that he had a 55 percent interest in NOL. While such certificate may provide the means to file a shareholder's derivative suit, it does not establish the actual monies invested by Nobile and therefore failed to establish any ascertainable damages. Nor has Nobile adequately established that the Defendants' actions in light of Nobile's purported non-cooperation were unreasonable. As a result, the defense will not be dismissed.

### Conclusion

For the following reasons, Nobile's motion is denied in its entirety. The parties shall attend a pretrial conference on June 11 in order to set a trial date.

It is so ordered.