Order, Supreme Court, New York County (Edward H. Lehner, J.), entered April 1, 2009, which granted defendant’s motion for summary judgment dismissing the complaint, reversed, on the law, without costs, the motion denied, and the complaint reinstated.
Elaintiff, a native of Sri Lanka, originally came to the United States on a student visa. In 1997, after completing his studies in electrical engineering, plaintiff accepted a job with nonparty *830 Wireless Facilities, Inc. (WFI). Defendant is an immigration attorney whom WFI regularly engaged to handle immigration matters for its foreign employees. WFI’s policy was to pay defendant’s fees if its employees utilized his services. In December 1997, defendant successfully petitioned, on plaintiffs behalf, for an Hl-B nonimmigrant temporary working visa, with an expiration date of August 1, 1999. Prior to that expiration date, defendant filed a petition that resulted in an extension of the Hl-B visa to July 15, 2002.
In or about August 1999, plaintiff stopped working for WFI. The reason for the cessation of work is sharply controverted by the parties. According to plaintiff, he informed WFI that he was interested in gaining employment elsewhere. He also maintains that WFI refused to provide him with his original Hl-B visa approval notice and other documents, which were in WFI’s exclusive possession and were necessary for him to prove his immigration status to prospective employers. Then, plaintiff claims, WFI retaliated against him by “benching” him, i.e., refusing to assign him any more work. Plaintiff alleges that the benching caused him to violate his visa, which required him to work to maintain his legal immigration status. WFI denies that it benched plaintiff and claims that it terminated him for legitimate business reasons. In December 2000, plaintiff resumed working for WFI. Plaintiff claims that the benching ended because he made clear his desire to continue working for WFI. WFI asserts that it simply decided to rehire plaintiff.
In May 2002, with the expiration date of his Hl-B visa approaching, plaintiff asked defendant to take steps to ensure his continued legal status. Instead of petitioning for an extension of plaintiffs existing Hl-B visa, which he had done previously, defendant filed a petition for a new Hl-B visa. It is unclear from the record whether plaintiff was aware of this decision, since defendant primarily communicated with WFI, and relied on WFI to pass relevant information on to plaintiff. Plaintiff now contends that he would not have agreed to defendant’s chosen course of action. That is because in order to secure a new visa, as opposed to extending the current one, plaintiff would have been required to travel to Sri Lanka to have the new visa validated, and he considered the political situation in that country to be threatening. Indeed, plaintiff did refuse to leave the United States, and as a result he lost his legal immigration status in February 2003, forcing WFI to terminate him. As it turned out, plaintiff would have had difficulty traveling to Sri Lanka after February 2002, when his passport expired.
Plaintiff commenced this action against defendant, alleging *831 that defendant committed legal malpractice by seeking to renew, rather than extend, his legal status. After the completion of discovery, defendant moved for summary judgment. In support of his motion, defendant submitted the affirmation of his attorney and several exhibits. The exhibits included the deposition transcripts of plaintiff and defendant and various records from plaintiffs WFI employment file. The employment records were accompanied by a “Certification” executed by an employee of WFI purporting to be authorized to authenticate the documents. Defendant argued that judgment in his favor was required as a matter of law because the employment records conclusively established that plaintiff was terminated from WFI, not benched. Therefore, defendant asserted, extending plaintiffs work visa was impossible since plaintiff could not establish that he had been continuously employed during the period of the visa. Defendant further argued that plaintiff concurred in the decision to procure a new visa, and that plaintiff was solely responsible for the futility of that strategy since he neglected to maintain a current passport and thus could not travel abroad to validate a new visa. Finally, defendant maintained that because plaintiff permitted his passport to expire, summary judgment was mandated, since plaintiff was required by federal law (specifically 8 CFR 214.1 [a] [3] [i]) to maintain a valid passport at all times in order to be entitled to extend his visa.
In opposition to the motion, plaintiff submitted his own affidavit, the affirmation of his attorney, and the affidavit of Charles H. Kuck, Esq., an attorney purporting to be an expert in immigration law. Plaintiff argued that the motion should be denied because the employment records, upon which defendant’s motion so heavily depended, were not properly certified and were hearsay. Accordingly, he asserted, defendant failed to satisfy his prima facie burden. At oral argument of the motion, plaintiff further claimed that defendant failed to establish his right to judgment as a matter of law in the first instance because he failed to submit the affidavit of an expert. In any event, plaintiff argued, he raised an issue of fact through his own affidavit and deposition testimony that he had been improperly benched. His expert explained that defendant committed malpractice by failing to take the position that plaintiff was benched, not terminated, and so was continuously employed. Such a position, according to Kuck, would have supported a petition for extension of the existing visa. As for the fact that plaintiff permitted his passport to expire, Kuck stated that “[a]n expired passport is a technical violation, easily cured, and in all my years of practice, I have never had a client deported on this basis.”
The IAS court granted defendant’s motion and dismissed the *832 complaint. The court did not expressly address plaintiffs position that defendant did not establish his prima facie entitlement to summary judgment. However, it did find that plaintiff failed to raise an issue of fact regarding his claim that defendant committed malpractice.
We reverse because defendant failed to satisfy his prima facie burden of establishing entitlement to judgment as a matter of law. The issues in this case are not part of an ordinary person’s daily experience, and to prevail at trial, plaintiff will be required to establish by expert testimony that defendant failed to perform in a professionally competent manner (see Menard M. Gertler, M.D., P.C. v Sol Masch & Co., 40 AD3d 282 [2007]; Merlin Biomed Asset Mgt., LLC v Wolf Block Schorr & Solis-Cohen LLP, 23 AD3d 243 [2005]). As this is a motion for summary judgment, the burden rests on the moving party—here, defendant—to establish through expert opinion that he did not perform below the ordinary reasonable skill and care possessed by an average member of the legal community (see R.A.B. Contrs. v Stillman, 299 AD2d 165 [2002]; Estate of Nevelson v Carro, Spanbock, Raster & Cuiffo, 259 AD2d 282, 284 [1999]). Also, defendant was required, on this motion, to establish through an expert’s affidavit that even if he did commit malpractice, his actions were not the proximate cause of plaintiffs loss (see Tran Han Ho v Brackley, 69 AD3d 533 [2010]). By failing to submit the affidavit of an expert, defendant never shifted the burden to plaintiff.
Defendant also failed to establish as part of his prima facie case that plaintiff was legitimately terminated from WFI and not benched. This is the critical issue, because if plaintiff can establish at trial that he was benched, a jury may conclude that defendant breached his duty to plaintiff by not petitioning for an extension of plaintiffs visa. However, defendant did not submit the affidavit of anyone with personal knowledge of what caused plaintiff not to work between August 1999 and December 2000. Instead, defendant relied entirely on the WFI employment records. However, those records were inadmissible despite having been “certified,” as the certification did not, by itself, meet the requirements of CPLR 4518 (a), i.e., show that the records were made in the ordinary course of business, that it was the ordinary course of WFI’s business to make such records, and that the records were made at the time of plaintiffs separation from WFI or within a reasonable time thereafter. Accordingly, they were hearsay. Because defendant did not identify any other nonhearsay evidence it could offer at trial to prove that WFI terminated plaintiff, the records are inadmissible for *833 purposes of defendant’s summary judgment motion (see Kramer v Oil Servs., Inc., 56 AD3d 730 [2008]). Without the records, we have no basis to conclude, as a matter of law, that plaintiff was terminated, leaving defendant no option but to petition for a new visa.
Contrary to defendant’s contention, the issue of plaintiff’s expired passport was not within the experience of an ordinary factfinder. Defendant’s argument that the expired passport would have been fatal to any effort to extend the visa relies on 8 CFR 214.1 (a) (3) (i), which provides, in pertinent part: “An alien applying for extension of stay must present a passport only if requested to do so by the Department of Homeland Security. The passport of an alien applying for extension of stay must be valid at the time of application for extension, unless otherwise provided in this chapter, and the alien must agree to maintain the validity of his or her passport and to abide by all the terms and conditions of his extension.” The regulation fails to state what the actual effect of this regulation would be on a visa extension application made by an alien with an expired passport. It is unclear whether the application would be denied outright, whether the alien would be afforded an opportunity to cure the lapse (as plaintiffs expert argued without opposition), or whether there would be some different consequence. Certainly the issue is beyond the ordinary experience of a fact-finder who has no familiarity with the byzantine world of immigration law. Accordingly, defendant, as the proponent of summary judgment, was required to present an expert’s affidavit in order to explain exactly what the consequence would have been. His failure to do so should have compelled denial of the motion.
Moreover, even if it could be said that defendant, despite the lack of an expert, sustained his prima facie burden simply by pointing to plaintiff’s failure to maintain a valid passport, plaintiff raised an issue of fact sufficient to defeat the motion. Plaintiffs expert opined in his affidavit that in his experience, the failure to maintain a valid passport has never resulted in a person’s loss of legal immigration status. Defendant failed to rebut this. Therefore, a trial is necessary to determine whether plaintiffs actions excuse defendant from liability.
Not even defendant makes the argument, advanced by the dissent, that even assuming plaintiff was illegally benched and had a valid passport, it still would have been proper for defendant to petition for a renewal of the visa. In any event, the argument is meritless. First, the dissent places the burden on plaintiff to explain what he was doing during the 16 months he was not working for WFI, when it was defendant’s burden to *834 negate the allegation in the complaint that plaintiff was illegally benched. The dissent fails to address the fact that defendant presented not one whit of admissible evidence that plaintiff voluntarily separated himself from WFI.
Furthermore, the dissent’s view would permit an unlawful and vindictive act by an employer to work to the detriment of an innocent alien. We find it improbable that defendant would have lacked any ability to present these unique facts to immigration authorities and explain the extraordinary prejudice that would befall plaintiff were he forced to make a trip to a war-torn country to validate a renewed visa that could have simply been extended had his employer not acted in a manner contrary to law. Even if the regulations were so inflexible, as the dissent believes, it would have been necessary for defendant to support his position with expert testimony explaining why even under such extreme circumstances his hands were tied. Indeed, as discussed above, the immigration regulations at issue here, including the section requiring a valid passport at the time an application for extension is filed, are hardly self-explanatory, nor is it possible to conclude from their face that defendant had no chance of successfully securing an extension of plaintiffs visa. Accordingly, we reject the dissent’s position that Supreme Court was “able to assess the adequacy of the legal services rendered, and require[d] no expert guidance.” Concur—Mazzarelli, Acosta, DeGrasse and Richter, JJ.
Tom, J.E, dissents in a memorandum as follows: The complaint, as supplemented by the averments contained in the affidavit, alleges that defendant committed malpractice by failing to seek extension of plaintiffs visa. The absence of an expert affidavit notwithstanding, defendant demonstrated his entitlement to summary judgment dismissing the complaint as a matter of law by establishing that plaintiff failed to maintain a continuous valid visa status, rendering it ineligible for extension. Plaintiff, in opposition, failed to even allege, by submission of an affidavit by someone with personal knowledge of the facts, that he met the conditions required to maintain the validity of his visa for an extension. He thus failed to establish a prima facie case by asserting that but for defendant’s alleged malpractice, his visa would have been extended.
Pursuing a cause of action for professional malpractice against an attorney requires the plaintiff to establish three elements: negligence by the attorney, which is the proximate cause of the loss sustained, and proof of actual damages (Mendoza v Schlossman, 87 AD2d 606 [1982]). If the plaintiff cannot establish that but for the alleged negligence of his attorney, a substantially *835 better resolution of the underlying matter would haye been achieved (see AmBase Corp. v Davis Polk & Wardwell, 8 NY3d 428, 434 [2007]), the cause of action is deficient and must be dismissed (Katash v Richard Kranis, PC., 229 AD2d 305, 306 [1996], lv dismissed 89 NY2d 981 [1997]). Because plaintiffs failure to satisfy one or more conditions of his visa precluded its extension, he cannot establish that he would have been granted a visa extension but for his attorney’s failure to exercise the requisite degree of professional skill and care.
Plaintiff, a national of Sri Lanka, came to the United States on an F-l student visa on January 5, 1995, and obtained a master of science degree from Washington University in St. Louis in December 1996. That same month, plaintiff received employment authorization from the Immigration and Naturalization Service, enabling him to pursue optional practical training, and in March 1997 he began working as an engineer for nonparty Wireless Facilities, Inc. (WFI). Since plaintiffs employment authorization only remained valid for a period of one year, expiring on December 26, 1997, WFI began the process of filing a petition to obtain an Hl-B temporary work visa for plaintiff (see generally Rogers v Ciprian, 26 AD3d 1 [2005]). Though the 1-129 application was initiated by another law firm, it was successfully completed by defendant, and plaintiff was issued an Hl-B visa, valid from December 30, 1997 through August 1, 1999. It is uncontested that defendant later filed an application to renew WFI’s petition, obtaining an extension of plaintiffs visa through July 15, 2002.
According to company records, plaintiffs employment with WFI ceased in August 1999 with his “separation,” effective after his last day of work on August 15. Although the paperwork evaluates plaintiff as “Eligible for rehire,” the annotation “Job Abandonment/Stop-payment of check” is handwritten at the top of the form.
Plaintiffs version of the events preceding his separation is recounted by his expert and differs markedly. According to the affidavit of the expert, Charles H. Kuck, an attorney specializing in immigration law, WFI took retaliatory action after plaintiff informed the company that he wished to change jobs, at which point WFI refused to assign him any further work or provide any further compensation for a period of 16 months. Furthermore, WFI refused to supply documentation necessary to enable plaintiff to obtain an Hl-B visa with another employer. Kuck relates that such action is known as “benching,” which is illegal.
Whatever may have transpired between plaintiff and his *836 employer to cause his separation from employment, it is uncontested that WFI again sought to avail itself of plaintiffs services in December 2000. As concerns defendant, plaintiffs only complaint up until this juncture was that when he requested pertinent “immigration documents so that I could demonstrate to potential new employers . . . that I was eligible to work in the United States,” defendant “simply advised me to take it up with WFI.” While the complaint alleges only that plaintiff was prevented from changing employers in 1999 because “WFI, without cause of [sic] legal basis refused to give Plaintiff a copy of his renewed H1B petition approval until February, 2001,” the Kuck affidavit asserts that “Kalish’s failure to give Suppiah the documents he requested was a departure from good and accepted immigration legal practice.” While Kuck asserts that defendant “should have remained in possession of Suppiah’s immigration filing,” he later concedes that it was WFI that ultimately provided plaintiff with a copy of his Hl-B petition. Kuck’s affidavit never explains why defendant should be held responsible for WFI’s conduct, either in refusing to assist plaintiff to change employers or in terminating his work assignments' and salary. Nor does Kuck attempt to demonstrate that defendant’s failure to keep a copy of plaintiffs documents, separate and apart from the records maintained by WFI, constitutes malpractice.
In any event, the misfeasance that the complaint, which was never amended, attributes to defendant as malpractice concerns events that took place in 2002, after WFI rehired plaintiff. The pertinent facts are addressed only in the Kuck affidavit, according to which, after WFI reinstated plaintiff, “WFI advised Suppiah that he had to leave the United States in order to obtain an Hl-B visa stamp on his passport.” Defendant then filed the disputed petition seeking a new visa rather than an extension of the existing visa. An internal e-mail dated March 12, 2002 from WFI’s human resources department to plaintiff states that “WFI will file your case as a new H1B visa as to avoid any issues,” and defendant’s deposition testimony indicates that plaintiffs separation from employment warranted the filing of a new petition. In any event, the petition was approved shortly thereafter, as indicated by a notice dated March 29, 2002 stating that a class Hl-B visa would be “Valid from 07/16/2002 to 12/ 16/2004.” The notice bears the annotation “Consulate: CHENNAI” (formerly known as Madras), which is located in southern India. The Kuck affidavit relates that “Suppiah thereafter consulted Kalish in May 2002 for legal advice concerning his immigration status and to assist Suppiah in obtaining permanent residency status in the United States.”
*837 Based on plaintiff’s 16-month separation from his employment with WFI, Kuck alleges, “In light of his benching Suppiah would have been eligible for a visa extension without leaving the United States . . . Kalish’s failure to act on Suppiah’s credible allegations of benching was a departure from good and accepted immigration legal practice, and was a proximate cause of Suppiah’s current Un[it]ed States immigration status.” Kuck does not state what that current status is, and this Court is left to presume that plaintiff has no passport, no visa and has remained in the United States illegally. Kuck does not explain how the alleged benching might have affected the visa application, and characteristically cites no authority for his inference that it was material to the application process.
On appeal, as on the motion, defendant takes the position that he properly filed an application for a new petition and visa because plaintiff did not meet the continuous employment requirement that otherwise would have permitted the extension of WFI’s petition and plaintiffs then-existing visa. Plaintiffs 16-month separation from his employment with WFI makes him unqualified for a visa extension. To obtain the new visa, defendant states, plaintiff would have been required to depart from the United States with the visa approval notice issued March 29, 2002, submit the notice and supporting documents to an American consulate outside the United States for the required Hl-B visa stamp, and return to the United States to be admitted on the new visa. Defendant asserts that plaintiffs inability to obtain a new visa was due entirely to his failure to abide by the conditions imposed by law on the holder of an Hl-B visa.
The record supports defendant’s contention that plaintiffs difficulties with his immigration status resulted from his failure to comply with the requirement to present himself at a consulate outside the United States for a visa interview. The notice of approval of the visa application specifically states, “Please contact the consulate with any questions about visa issuance. THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.” It is uncontroverted that plaintiff never left the United States and that no new visa ever became effective. Plaintiffs passport bears an expiration date of April 29, 2002, and he conceded during his examination before trial that he never obtained a new valid passport. He further admitted that defendant took no part in processing his passport renewal application.
As expressed by Kuck, the conduct alleged to constitute malpractice is that defendant, on behalf of WFI (denominated *838 “petitioner” under regulations), could have filed for an extension of WFI’s petition for plaintiff (denominated “beneficiary” under the regulations), rather than filing a new petition. As Kuck opines, defendant “could have obtained an extension for Suppiah of his existing Hl-B visa beyond July 15, 2002,” instead of filing a new visa petition.
Kuck’s contentions do not find support in the applicable regulations. “A request for a petition extension may be filed only if the validity of the original petition has not expired” (8 CFR 214.2 [h] [14]). Generally, “An extension of stay may not be approved for an applicant who failed to maintain the previously accorded status or where such status expired before the application or petition was filed” (8 CFR 214.1 [c] [4]). To excuse a “failure to file before the period of previously authorized status expired,” it must be shown, in addition to other requirements, that “[t]he alien has not otherwise violated his or her nonimmigrant status” (8 CFR 214.1 [c] [4] [ii]). A petition is subject to revocation if “[t]he beneficiary is no longer employed by the petitioner in the capacity specified in the petition” (8 CFR 214.2 [h] [11] [iii] [A] [1]). Whether plaintiffs employment separation with WFI was caused by self-abandonment or benching, there was clearly a 16-month break in his employment resulting in revocation of his visa and precluding visa renewal.
Kuck asserts, in conclusory fashion, that “an application for extension of the visa status . . . would have allowed Suppiah to extend his visa status without ever leaving the United States.” However, the requirements for extension are clear and could not be met due to the conceded 16-month break in plaintiffs employment with WFI, which rendered the company’s original petition invalid. If the only viable course was to petition for a new visa, defendant can hardly be faulted for pursuing it. Plaintiff, via his expert, cites no statutory or other authority in support of the suggestion that benching might afford a beneficiary with an exception to the rule that the validity of an Hl-B visa depends upon a beneficiary’s continuous employment with the employer who petitioned for his visa. Therefore, plaintiff has provided no basis for his claim that defendant’s failure to seek a visa extension constitutes attorney malpractice.
Nor can defendant be held liable for plaintiffs failure to obtain renewal of his passport, another condition necessary to maintaining the validity of his visa. Kuck asserts, again in conclusory fashion and without citation of authority, that “[a]n expired passport is a technical violation, easily cured, and in all my years of practice, I have never had a client deported on this basis.” He asserts that the passport need only be valid at the *839 time of application for an extension (8 CFR 214.1 [a] [3]), and that under the statute, “Suppiah only had to agree to maintain the validity of his passport.” He offers no explanation why plaintiffs violation of his agreement “to maintain the validity of his passport” should have no adverse effect on either the validity of his then-existing Hl-B visa or the availability of an extension. Kuck maintains that “the passport ‘issue’ could easily have been cleared up by Suppiah briefly visiting his country to obtain a current passport, and then reentering the [United States] with that passport and with his current Hl-B visa prior to July 15, 2002” (the expiration date of the visa). However, Kuck fails to cite either statute or case law for this proposition, and again presumes that plaintiffs Hl-B visa remained valid (8 CFR 214.2 [h] [14]) so as to permit his reentry into the United States in compliance with the general requirement that an alien applying for an extension of admission present a valid visa to “establish that he or she is admissible to the United States” (8 CFR 214.1 [a] [3] [i]). Where an “expert’s ultimate assertions are speculative or unsupported by any evidentiary foundation . . . the opinion should be given no probative force and is insufficient to withstand summary judgment” (Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]).
The failure of proof on the dismissal motion lies not with defendant, but with plaintiff. Significantly, the reason for plaintiffs “separation” from his employment—whether benching, as plaintiff now maintains, or abandonment of his job, as WFI records indicate—presents a question of fact. Plaintiff has submitted no affidavit in opposition to the motion explaining why he left WFI or what he was doing during the ensuing 16 months; nothing in the record provides an explanation, including the Kuck affidavit, which—as the affidavit of an attorney unaccompanied by documentary evidence—is without probative value (Zuckerman v City of New York, 49 NY2d 557, 563 [1980]). In the absence of a submission, in admissible form, attesting that plaintiff at all times met the conditions of his Hl-B visa, the opposition fails to allege that but for defendant’s malpractice, plaintiff could have received a visa extension (see Yong Wong Park v Wolff & Samson, P.C., 56 AD3d 351 [2008], lv denied 12 NY3d 704 [2009]). The expert’s submission is thus procedurally deficient, warranting dismissal of the complaint on that basis alone (see Alvarez v Prospect Hosp., 68 NY2d 320, 327 [1986]), since plaintiff has failed to provide a viable theory of malpractice by defendant supported by the requisite factual predicate.
Plaintiffs opposition evades discussion of the circumstances *840 under which he left WFI and what he was doing during the 16 months before he was rehired, and fails to address such matters as whether he took alternative employment to support his family (a wife and a child born in February 1999) during this period. The opposition to the motion only suggests, by indirection, that there was some misconduct on the part of WFI in connection with plaintiffs separation from his employment with the company, but neglects to supply any information to support that intimation or to connect it to the conduct alleged to constitute malpractice. Finally, plaintiff coyly offers only the affidavit of his purported expert in immigration law, in lieu of a sound legal argument supporting his cause of action.
This Court’s decision in Estate of Nevelson v Carro, Spanbock, Raster & Cuiffo (259 AD2d 282 [1999]), on which plaintiff relies, acknowledges expert evidence regarding a professional’s duty of care is unnecessary “where ‘ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service’ ” (id. at 283, quoting S & D Petroleum Co. v Tamsett, 144 AD2d 849, 850 [1988]). Here, the court is uniquely qualified and able to assess the adequacy of the legal services rendered, and requires no expert guidance. The conclusory assertions of malpractice, such as those contained in the affidavit of plaintiffs expert, are insufficient to raise a triable issue of fact so as to withstand summary judgment dismissing the action (see Margolese v Uribe, 238 AD2d 164, 166 [1997]).
Accordingly, the order should be affirmed.